| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Turkelson<br>Special Agent: Salcido ATF | Telephone: (810) 766-5177<br>Telephone: (810) 341-5710 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.
James C. Jelks,

Case No.    1:21-mj-30025
Judge: Morris, Patricia T.
Filed: 01-14-2021 At 01:57 PM
CMP USA v. James Jelks (krc)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 29, 2020__ in the county of __Saginaw__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a firearm |

This criminal complaint is based on these facts:

That on or about October 29, 2020, in the Eastern District of Michigan, James Jelks, knowing that he had been convicted of a felony offense punishable by a term of imprisonment exceeding one year, knowingly possessed, in and affecting commerce, a firearm in violation of 18 U.S.C. § 922(g)(1).

☑ Continued on the attached sheet.

*Complainant's signature*

Kyle Salcido, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 14, 2021

*Judge's signature*

City and state: Bay City, MI    Patricia T. Morris, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Kyle Salcido, being first duly sworn on oath, states that:

1. I am a Special Agent employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), U.S. Justice Department, and have been so employed since November 7, 2016. I successfully completed the Criminal Investigations Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC), Brunswick, Georgia. I also completed the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training (SABT) National Training Academy conducted in Brunswick, Georgia. During these courses of study, I received training in the investigation of federal firearm and narcotics violations. Previously, I was a certified law enforcement officer in Michigan with the City of Saginaw Police Department and the Saginaw Township Police Department for a total of five years. During which time, I spent two years on the Bay Area Narcotics Enforcement Team (BAYANET) enforcing state narcotics and firearms violations. I personally investigated and assisted in numerous of cases, which led to search warrants, arrests, prosecutions, and the seizure of large quantities of narcotics and firearms.  During my employment with ATF, I have conducted or participated in investigations related to the possession and manufacture of firearms and narcotics in violation of Titles 18, 21, and 26 of the United States Code.

2. I make this affidavit from personal knowledge based on my participation in this investigation, communications with the Michigan State Police, and others who have personal knowledge of the events and circumstances described herein, and information gained through my review of relevant documents related to this investigation. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

3. I am currently investigating James C. Jelks, date of birth XX/XX/1989, for violations of 18 U.S.C. § 922(g)(1), possession of a firearm by a person who has been convicted in any court of a crime punishable by a term of imprisonment exceeding one year.

4. On October 29, 2020, Troopers Kovaluk and Macelin of the Michigan State Police conducted a traffic stop on a vehicle near the intersection of E Genesee Ave and Mott Street in the city of Saginaw for an improper plate violation.

5. Troopers made contact with the driver of the vehicle Tee Harris, the front seat passenger Ashely Smith, the rear passenger side occupant Gregory Williams, and James Jelks the rear driver passenger. The driver, Harris stated she did not know the vehicle was unregistered and did not have insurance as it was not her vehicle.

6. Harris stated the vehicle was registered to the front seat passenger Smith. Troopers asked Smith if she would consent to a search of the vehicle, which she granted. At this point, all four occupants were removed from the vehicle so troopers could begin a search. During the search, Tpr. Kovaluk located a black pistol tucked underneath the front driver's seat. The barrel was pointed towards the passenger side of the car and the handle was facing the rear of the vehicle. Due to the orientation and position of the firearm it appeared the firearm would have been placed under the seat by the rear driver's side passenger. The firearm was clearly observed by Trp. Kovaluk when he opened the rear passenger driver's side door on the floorboard in plain view to anyone sitting the back seat.

7. The firearm was seized and made safe on the scene. It was identified as a Ruger Model 57, semiautomatic pistol, 5.7x28mm caliber, made by Sturm, Ruger, & Co., bearing serial number 641-56983.  Troopers ran the firearm through Law Enforcement Information Network (LEIN) and which showed it as unregistered.

8. After the firearm was made safe, all occupants of the vehicle were interviewed on scene. Smith, the front passenger and owner of the vehicle was mirandized and interviewed. She was aware the vehicle's plate was unregistered and that she had not purchased insurance for the vehicle yet. She also stated she was unaware of a firearm being in the vehicle. Prior to the traffic stop, Jelks'

3

cousin had been in the vehicle but he was dropped off at another residence on 12th Street, and the only other people that had been in the vehicle were presently there.

9. Williams was then mirandized and agreed to speak with troopers on scene. Williams stated he and Jelks and Jelks' cousin were at a residence on Federal when all three of them were picked up by Smith and Harris in the vehicle they were currently in. They then dropped off Jelks' cousin at another residence nearby to where they had just been picked up. At no point did Williams see a firearm or have any knowledge of a firearm in the vehicle.

10. Harris was interviewed and said she was driving around with Smith prior to picking up Jelks and Williams. While Harris and Smith were on their way to pick up Jelks and Williams, Jelks cousin flagged them down and asked for a ride to a residence on Federal. Jelks' cousin rode in the backseat where he was dropped off at a house on Federal. After Jelks' cousin was dropped off, Jelks and Williams got into the vehicle and left with the girls. Harris stated all three males were never in the vehicle at the same time. She was unaware there was a firearm in the vehicle and never heard anyone in the vehicle mention the firearm.

11. Jelks was mirandized and interviewed on scene and agreed to speak to troopers. During the interview Jelks said the firearm in the car did not belong to him, but rather it belonged to his cousin. He stated several times his cousin purchased the firearm and it belonged to his cousin. Troopers had ran the firearm

4

and were already aware it was unregistered. Jelks said he did not place the firearm under the seat.

12. Jelks said he, his cousin, and Williams were all hanging out together at a residence on Federal where Harris and Smith picked all three of them up. Jelks said he was originally sitting in the middle back seat between Williams and his cousin. They drove and dropped Jelks' cousin off at his residence but Jelks never saw his cousin place a firearm under the seat. Jelks admitted his DNA would show up on the firearm when sent to the crime lab, which Jelks said it would because he had touched it earlier.

13. Eventually, after Tpr. Kovaluk pointed out the firearm was in plain view, Jelks admitted he knew the firearm was in the car and admitted to placing the firearm under the seat where it was located. Jelks confessed he had taken the firearm from his cousin after his cousin had become drunk. He said he did so to prevent his cousin from doing anything stupid or getting himself in trouble for possessing a firearm while intoxicated. Tpr. Kovaluk asked Jelks why he would do this when Jelks was not allowed to legally possess a firearm due to being a convicted felon, he said he was just trying to help.

14. Jelks said he had put the firearm under the driver's seat when he got into the car. He said he did not tell the troopers about the firearm as he knew he was not supposed to have it and he had also just recently been released from parole.

5

Following the traffic stop Jelks was lodged at the Saginaw County Jail. The other three occupants of the vehicle were released at the scene.

15. On November 13, 2020, I reviewed a copy of Jelks' criminal history, which showed the following felony convictions:

(a) 03/25/2010 – Felony Weapons – Carrying concealed, Felony Weapons – Danger Weapon – Carrying with Unlawful Intent, and Felony Assault with a Dangerous Weapon.

(b) 05/05/2014 – Felony Controlled Substance – Delivery/Manufacturing (Cocaine, Heroin, or another narcotic) less than 50 grams.

(c) 10/27/2016 – Felony Controlled Substance – Delivery/Manufacturing (Cocaine, Heroin, or another narcotic) Less than 50 grams.

(d) 04/03/2017 – Felony Controlled Substance – Delivery/Manufacturing (Cocaine, Heroin, or another narcotic) Less than 25 grams.

16. Jelks received a prison sentence of 1 year and 6 months to 5 years sentence on the Weapons Offenses – Carrying Concealed, Carrying with Unlawful Intent, and Assault with a Dangerous Weapon for his convictions on 03/25/2010, and thus he was aware on October 29, 2020, that he had been previously convicted of an offense punishable by a term of imprisonment exceeding one year.

17. I am recognized by ATF as an expert in the interstate nexus of firearms. The firearm described as a 5.7x28mm caliber semiautomatic pistol made by Sturm, Ruger & Co., model 57, serial number 641-56983, was manufactured outside the state of Michigan.

18. Based on the foregoing, I have probable cause to believe that on October 29, 2020, in the Eastern District of Michigan, James Cornelieus Jelks, knowing that he had been previously convicted of an offense punishable by a term of imprisonment exceeding one year, knowingly possessed, in and affecting interstate commerce, a firearm, in violation of 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm.

_____
Kyle Salcido
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to before me and signed in my presence and/or by reliable electronic means on ___January 14, 2021_____.

_____
Hon. Patricia T. Morris
United States Magistrate Judge